## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| MARY LAMONT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-CV-82 (WLS) |
| | : | |
| CITY OF ALBANY | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Presently pending before the Court is Defendant City of Albany's Motion to Strike (Doc. 59) and Motion for Summary Judgment (Doc. 30).   For the following reasons, Defendant's Motion to Strike (Doc. 59) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 30) is **GRANTED**.

## PROCEDURAL BACKGROUND

Plaintiff Mary LaMont filed her complaint in the above-captioned matter on June 1, 2012, asserting claims under Title VII of the Civil Rights Acts (hereinafter "Title VII"), as amended at 42 U.S.C. § 2000(e), *et seq.*, for race and sex discrimination and retaliation and the Equal Pay Act of 1962, 29 U.S.C. §§ 206(d), 216(b), for sex-based wage disparity. LaMont contends that she was subject to disparate treatment and hostility due to her race and sex, retaliated against for opposing unlawful employment practices and participating in EEOC investigations, and not paid comparably to an equivalent male counterpart.  On August 13, 2012, the City answered LaMont's complaint.  (Doc. 5.)

On October 7, 2013, the City moved for Summary Judgment.   (Doc. 32.) On November 14, 2013, LaMont filed her Response in Opposition to the City's Motion for

1

Summary Judgment.  (Doc. 50.)  On December 9, 2013, the City filed its Reply to LaMont's Response.  (Doc. 58.) Along with its Reply, the City filed a Motion to Strike the Deposition of LaMont.  (Doc. 59.)  LaMont responded to the City's Motion to Strike. (Doc. 60.)

## THE CITY'S MOTION TO STRIKE

The City moves to strike LaMont's deposition, specifying particular statements allegedly not in accordance with Fed. R. Civ. P. 56 and Fed. R. Evid. 602.  (Doc. 59.)  The Court does not herein rely upon the specified statements noted by the City in LaMont's deposition in its analysis of the Motion for Summary Judgment.  Therefore, the City's Motion to Strike (Doc. 59) is **DENIED as MOOT**.

## SUMMARY JUDGMENT STANDARD

### I.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   <u>Local Rule 56</u>

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material

facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, the City properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Docs. 30, 31.) Likewise, LaMont filed the proper response to Defendant's statement of material facts. (Doc. 49.) Having established the applicable standards, the Court will proceed to the facts.

### RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1), the City's Answer (Doc. 5), the City's Statement of Undisputed Facts (Doc. 31), LaMont's Response to the City's Statement of Undisputed Material Facts (Doc. 49), and the record in this case.

Plaintiff Mary LaMont is a white female who was employed as the Director of Human Resources for the City of Albany, Georgia. On May 22, 2009, Lamont accepted the City's offer of employment and began work on June 1, 2009. She remained employed in that position until her resignation on July 12, 2010. LaMont's starting salary was $80,000 and increased to $82,000 upon the successful completion of a six-month probationary period. At the time of her hiring, LaMont and City Manager Alfred Lott agreed that she would accrue paid sick leave at the rate of twelve days per year and would be provided an additional seven days of leave immediately "for unforeseen situations." LaMont was classified as an exempt, salaried employee.

As a Department Head, LaMont was under the supervision of the City Manager Alfred Lott and Assistant City Manager Wes Smith. LaMont's job duties included, but were not limited to, managing the Human Resources Department, hiring and firing subordinate employees, supporting City managers in implementing equal employment opportunity processes, and maintaining records to reflect the accumulation and/or utilization of leaves of absence for all City employees. The Human Resources Department was comprised of four

divisions: Compensation and Benefits, Recruitment and Selection, Risk Management, and Organization and Employee Development.

On August 6, 2009, LaMont issued a written reprimand to Price. Price appealed that reprimand to Lott, who stated at the appeal hearing that he felt "like Judge Judy trying to figure out what's going on with these women." During another appeal hearing at which LaMont was present, Lott said, "Women don't know how to raise a man, likewise men don't know how to raise a girl," and "A guy can't win with a violent woman. Unless the woman is just terrible, she will get the kids –can be a prostitute and crack head, but she will still get the kids. Mom and Apple Pie –that's America." During a meeting on January 12, 2010 at which LaMont was present, Lott commented that the Human Resources Department needed a male authority to get control of the Department.

On December 21, 2009, twenty-one days after LaMont's initial six-month probationary period ended, LaMont submitted to Lott a written request for a salary increase from $82,000 to $92,000.  Although Chip King, an employee with the City's contracted compensation firm, recommended a salary increase for LaMont, Lott never approved LaMont's request.

In February 2010, Beverly McCrimmon, a black female, filed a grievance against LaMont for disparate pay. Lott directed LaMont to have no participation in the investigation of the grievance, which was conducted by her subordinate EEO Manager Niger Thomas.

Faye Everson, a white female, was hired by LaMont and began working on October 19, 2009 as Benefits Administrator.  Everson was offered and accepted the Benefits Administrator job. When Everson accepted the position, she signed the job description which stated that an Associate's Degree was a requirement. On March 10, 2010, Lott directed LaMont to terminate Everson for falsification of her employment application because Everson's position required an Associate's Degree and Everson's online application indicated that she had a degree when, in fact, she did not.  Prior to that, on February 26, 2010, during the investigation into McCrimmon, Thomas made a comment to LaMont that

Everson "could not be fired for no degree" because "Beverly [McCrimmon] doesn't have a degree either." LaMont's written termination notice to Everson stated that Everson was being terminated because she did not possess an Associate's Degree, which was a minimum requirement for the position, and during their termination meeting on March 11, 2010, LaMont verbally stated to Everson that she was being terminated for application falsification. The following day, LaMont submitted a written list of questions Everson asked during the termination meeting to EEO Manager Thomas. That list was forwarded to Lott and the City Attorney's office. LaMont was then called into a meeting with Lott and Wes Smith.  During that meeting, Lott stated that if the City had used lack of qualification as the reason for terminating Everson, it would also have to terminate McCrimmon because she did not have an Associate's Degree either. After the meeting, LaMont sent a second termination letter to Everson stating that the reason for her termination was providing false information on her employment application.

Also, during the March 12 meeting with Lott and Smith, LaMont stated that she had never worked anywhere where her race was an issue; Lott responded that neither had he but that in Albany LaMont's race would always be an issue and that she should take it into consideration every time she made a decision.

In March 2010, the U.S. Equal Employment Opportunity Commission (EEOC) notified the City that Everson was filing a Charge of Discrimination regarding her termination. On April 14, 2010, LaMont met with Lott, Wes Smith, and Assistant City Attorney Jenise Smith to discuss the City's position statement to be submitted in response to Everson's charge. At that meeting, the attendees discussed how best to explain Everson's two termination notices containing differing reasons for her termination.  LaMont reiterated her belief that Everson had not provided false information. When Lott said that LaMont sounded as though she was defending Everson, Lamont stated that part of her job as Human Resources Director was to make recommendations regarding termination and retention and to provide correct information regarding human resources matters. As Lott

left the meeting, he told LaMont that she was "a problem now." LaMont did not submit information or documentation to the EEOC concerning Everson's charge until after LaMont's resignation from the City on July 12, 2010. No one associated with or employed by the City ever told LaMont what to say in regard to Everson's charge.

Immediately following the April 14, 2010 meeting, LaMont completed and the next morning sent an Intake Questionnaire to the EEOC asserting race and sex discrimination and retaliation, alleging that she believed she was being constructively discharged. The City did not receive notice of the charge of discrimination until on or around June 8, 2010.  On August 15, 2011, the City received notice of LaMont's second charge of discrimination, filed on or about August 3, 2011. The EEOC issued notices of right to sue on both of her charges to LaMont on or about March 28, 2012.

LaMont was out of work and out of the country on a sea cruise from April 23, 2010 to May 2, 2010. Following a physically and emotionally traumatic event that occurred during her vacation, she submitted a Family Medical Leave Act (FMLA) request on May 3, 2010. LaMont's request was denied because she had not worked for the City for twelve months or more and was therefore ineligible for FMLA leave. Lott, however, asked LaMont to submit a more specific request with start and end dates for her leave. LaMont's second request for leave from May 3, 2010 to May 10, 2010 was approved, and she took that time off as sick leave.

During LaMont's sick leave, Assistant City Manager Wes Smith instructed Risk Manager Wright to determine the amount of leave time LaMont had available. Wright determined that LaMont had only claimed seven hours of vacation time since she began employment with the City. Smith knew that LaMont had taken more vacation time than that. Upon calculating the leave time LaMont had taken, the City determined that LaMont had exceeded her accrued vacation leave time by 21.74 hours. LaMont's total leave hours were then reduced to negative 21.74.

Under the City's leave policy, LaMont earned hours of paid vacation time at a rate of 15 days (or 120 hours) per year plus one "DYOT" day. Hours that were not used during the previous year rolled over into the next. Upon calculating the balance of LaMont's paid vacation time, the City determined that LaMont had already taken 96 hours during 2010 though she only had available 74.26. The City thus credited a 21.74 hour deficit to her account.

LaMont regularly worked over forty hours in a week or over eighty hours in a two-week pay period. Before LaMont's leave hours were reduced to a negative total, she had intended to utilize the accumulated leave time she had earned to take the entire month of June off with pay and then leave city employment on July 5, 2010. Prior to LaMont's resignation she had begun reviewing job openings at other employers. LaMont took a previously-scheduled but unpaid (because of her negative annual leave hours) time off from July 6 to July 9, 2010. On July 12, 2010, LaMont asked Lott to grant her a paid, indefinite leave of absence for the duration of the investigation of her EEOC charge. Lott refused her request, and LaMont resigned that day.

## ANALYSIS

### I.    LaMont's Title VII Retaliation Claim

Title VII's retaliation clause makes it unlawful "for an employer to discriminate against any of his employees . . . because [that employee] opposed any practice made an unlawful employment practice" by Title VII or because that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: (1) she opposed an employment practice that she both subjectively and objectively reasonably believed to be unlawful or participated in an activity protected by Title VII; (2) she suffered a materially adverse employment action sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) there was a but-for causal connection between the opposition or

participation in the protected activity and the materially adverse action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001); *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997).

Under *McDonnell Douglas* burden-shifting, the plaintiff bears the initial burden of establishing her *prima facie* case. *Gardner v. Aviagen*, 454 F. App'x 724, 728 (11th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. 792, 802-03 (1973)). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the materially adverse employment action. *Id.* If the defendant does so, the plaintiff must make a showing that the nondiscriminatory reason was pretextual. *Id.*

LaMont alleges both that she opposed what she reasonably believed to be unlawful employment practices and that she participated in the investigation into Everson's EEOC charge as well as in the investigation into her own EEOC charges. (Doc. 1 at 7.) The City challenges both of these assertions. LaMont also alleges that she suffered materially adverse employment actions, including false accusations, the reduction of her accrued leave time, close monitoring by other City employees during and after work hours, the erasure of her computer files and emails, denial of a raise, the removal of job duties and responsibilities, and, ultimately, constructive discharge. (Doc. 1 at 2-3.) LaMont argues in her Response to the City's Motion for Summary Judgment that these actions rose to the level of a hostile work environment, which is itself a materially adverse employment action. (Doc. 50 at 24-26.) The City also contests that LaMont suffered any materially adverse employment action and that any combination of actions resulted in a hostile work environment.

### A. LaMont's Participation in Protected Activity

LaMont states that she participated in the Everson investigation by assisting Everson in filing an Open Records Act request to support her EEOC complaint. LaMont cites nothing in the record to support this assertion and stated in her deposition that she "had nothing to do with [Everson's] filing an open records request." (Docs. 38 at 188-91; 50 at

9

13-14.) Additionally, LaMont argues that her refusal to provide false information to the EEOC regarding Everson's charge constituted "participation" in Everson's EEOC investigation. (Doc. 50 at 15.) Such alleged "non-participation," however, does not constitute protected activity sufficient to support a retaliation claim. *Harris v. Fulton-Dekalb Hosp. Auth.*, 255 F.Supp.2d 1347, 1356 (N.D. Ga. 2002), *aff'd sub nom. Harris*, 48 F. App'x 742 (11th Cir. 2002). *Harris* discusses an exception to this holding where an employer pressures an employee to provide false information in an investigation and the employee refuses to do so. *Id.* at 1357. LaMont alleges similar facts. However, in her Response to Defendant's Statement of Material Facts, LaMont admitted that at no time did any City employee tell LaMont what to say with regard to Everson's Title VII charge. (Doc. 49 at 46.) The Court finds, therefore, that LaMont's non-participation in Everson's Title VII investigation prior to LaMont's resignation did not constitute protected activity under Title VII's retaliation clause.

The Court further finds that, even if LaMont has otherwise demonstrated the first two elements of a prima facie case for retaliation with regard to her participation in Everson's or her own Title VII investigation, LaMont has not demonstrated a causal connection between any of the actions which she alleges were materially adverse and any of her alleged participation.  In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court held, "Title VII retaliation claims must be proved according to the traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. 2517, 2533 (2013).

As to LaMont's alleged participation in Everson's EEOC investigation, LaMont admitted in her response to the City's Statement of Material Facts that she did not submit information or documentation to the EEOC concerning Everson's charge until after her resignation from the City on July 12, 2010. (Doc. 49 at 46.) Therefore, even if LaMont participated in this investigation, there could not have been a causal connection because all of the alleged materially adverse employment actions occurred prior to her participation in

the Everson investigation. *Cf. Hubbard v. Ga. Farm Bureau Mut. Ins. Co.*, 2013 WL 3964908 at *1 (M.D. Ga. 2013) (holding that a plaintiff "can satisfy her burden if she can prove a 'close temporal proximity' between the time her employer learned about her protected activity and her [materially adverse action by the employer]").

Furthermore, LaMont alleges that she was retaliated against for participating in the investigations into her own EEOC charges. As to LaMont's second EEOC charge, this cannot have been the case because it was filed in August 2011, well after her resignation and all of the alleged materially adverse employment actions she suffered. As to LaMont's first charge, the City was not provided notice of this charge until on or around June 8, 2010. However, all of the employment actions alleged by LaMont to be materially adverse, such as the offensive remarks by Lott, the meetings regarding Everson, the removal of the EEO Unit from LaMont's control, and the recalculation of her leave time, occurred before June 8, 2010. The Court finds no causal connection between LaMont's participation in her own EEOC charge investigations and employment actions alleged to have occurred before her employer was even aware of those charges. *Brungart v. BellSouth Tel., Inc.*, 231 F.3d 791, 799 (11th Cir.2000) (finding that temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct). The Court finds therefore that LaMont has not demonstrated a prima facie case for retaliation based on her participation in an investigation, proceeding, or hearing under Title VII.

**B. LaMont's Alleged Opposition to Unlawful Activity**

LaMont also alleges that she was retaliated against for opposing what she reasonably believed to be unlawful activity. Title VII's opposition clause protects against retaliation for an employee's acting or speaking to oppose an employment practice that she reasonably believes to be unlawful. *Total Sys. Servs.*, 221 F.3d at 1175. LaMont alleges that she opposed what she believed to be unlawful employment actions in three ways: (1) assisting Everson with her EEOC complaint; (2) refusing to provide false information to the EEOC regarding

11

Everson's charge; and (3) stating that she believed Everson's termination was racially motivated. (Doc. 50 at 16.)

As discussed above, LaMont has not established that she assisted Everson with her EEOC complaint during the time LaMont was employed by the City. (*Supra* Part I.A.) Thus, the Court finds that LaMont has not demonstrated that she opposed an unlawful employment practice by assisting Everson.  Next, the Court finds that LaMont has not established that she articulated to her supervisors that Everson's termination was racially motivated. LaMont swore in her declaration that she stated during the March 12, 2010 meeting with Lott and others that she believed Everson's termination was racially motivated. (Doc. 48-1 at ¶ 34.) However, LaMont did not state during her deposition that she ever communicated this to her supervisors. (*See* Doc. 38.) Also, during the June 7, 2010 EEOC Mediation Preparation Meeting, LaMont stated that she had no "belief one way or the other" as to whether Everson "was terminated because of her race." (Doc. 57-4 at 47.) The Court finds, therefore, that LaMont has not established that she ever communicated to her supervisors her belief that Everson's termination was unlawfully race-based.

LaMont did communicate that she was upset that she was chosen to terminate Everson even though she was removed from the investigation into Everson's application and EEOC charge. (*Id.* at 47-50.) However, the Court does not find that LaMont has established that her belief that this was unlawful was objectively reasonable. "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). LaMont's alleged basis for believing that the City's choice to have her terminate Everson was unlawful was based solely on the facts that LaMont is white and Everson is white and that LaMont was not included in the investigation into Everson's EEOC charge and application falsification. (*Id.*) However, LaMont was the Director of Human Resources. One of her job duties was to hire and fire her subordinates. As the person who hired Everson, LaMont should reasonably be expected to be the person

12

to terminate Everson. The Court finds that LaMont's belief that the City's decision to have LaMont terminate Everson was unlawful was not objectively reasonable because the City simply ordered LaMont to perform one of her job duties.

Finally, the Court finds that LaMont's refusal to provide false information to the EEOC did not constitute "opposition" to unlawful activity. For purposes of the statute, "oppose" means "to resist or antagonize . . .; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). The Court finds that any definition of the term opposes requires some "expenditure[] of energy." *Id.* Here, LaMont contends that in not proactively lying to the EEOC she opposed unlawful conduct. If this is the case, then every employee who chooses not to lie to the EEOC has opposed unlawful conduct. Perhaps where an employee has been asked to lie by her employer and adamantly refuses, a court could find that, in resisting her employer's pressure, the employee has expended energy sufficient to constitute opposition. But here, as discussed above, the Court is unable to find that the City asked or pressured LaMont to lie to the EEOC and that she refused. The Court finds, therefore, that LaMont has failed to establish that she opposed what she reasonably believed to be an unlawful employment practice.

In summary, the Court finds that LaMont has failed to establish a prima facie case for retaliation under Title VII under either the participation or opposition clause. The City of Albany is therefore entitled to summary judgment as to LaMont's Title VII retaliation claim.

## II. LaMont's Race and Sex Title VII Discrimination Claims

LaMont also alleges that she suffered disparate treatment on the basis of her race and sex. (Doc. 1 at 4-6.) Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff seeks to

prove discrimination through circumstantial evidence, as LaMont does in the instant case,[1] the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of race or sex discrimination under Title VII, a plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees outside of her protected class, or was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

The City's Motion for Summary Judgment primarily argues that LaMont has not established that she suffered an adverse employment action and, in the alternative, that if she has, the City had legitimate, nondiscriminatory reasons for its actions and that LaMont has not established that she was treated less favorably than anyone similarly situated outside her protected class. (Doc. 32 at 34.)

## A. Alleged Adverse Employment Actions

An adverse employment action for purposes of a Title VII discrimination claim is a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The perspective from which

---

[1] *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)) (defining direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption").

alleged adverse employment actions are considered is that of a reasonable person in the employee's circumstances, not a subjective perspective. *Id.* at 1239-40.

LaMont alleges the following adverse employment actions: repeated false accusations, the unjust taking of her accumulated leave time, close scrutiny of her work, monitoring during and after work hours, the erasure of her computer and e-mail files, denial of a raise, a threat to terminate her, the removal of responsibilities and authority (specifically the removal of the EEO division from her supervision), the City's efforts to "prevent her from obtaining unemployment compensation benefits through falsehoods," the publication of "false and malicious information regarding her to the press," and constructive discharge. (Doc. 1 at 2-4.)

First, the Court finds that many of these actions simply are not "adverse" within the Title VII context. The Court finds that repeated false accusations alone, without accompanying negative employment consequences, are not adverse employment actions. *Soloski v. Adams*, 600 F.Supp.2d 1276, 1356 (N.D. Ga. 2009). Furthermore, the Court cannot identify within the record specifically the accusations to which LaMont is referring. Next, the Court finds that increased supervision and monitoring of LaMont's work is not an adverse employment action. *Little v. Peach Cnty. Sch. Dist.*, at 2009 WL 198003 *11 (M.D. Ga. 2009). Likewise, the Court finds that the deletion of LaMont's email and computer files was not an adverse employment action because LaMont has not alleged that this resulted in any serious and material change in the terms, conditions, or privileges of her employment. *See Streeter v. The Bridge, Inc.*, at  2006 WL 680573 *4 (M.D. Ala. 2006) (holding that not being provided a computer quickly and not being able to access certain paper files were not adverse employment actions).

In her Response to the City's Motion for Summary Judgment, LaMont explains that her allegation that she was "monitored by employees and/or agents of Defendant during and after work hours" refers to a microphone being installed on her work computer, her being followed by Albany Police Department cars, and a false report to LaMont's landlord

that LaMont had been involved in a domestic violence incident, which caused LaMont's landlord to threaten her with eviction. (Doc. 50 at 33-34.) The Court finds that LaMont provides no support for these allegations aside from her own sworn declaration. Furthermore, LaMont has pleaded no facts connecting the microphone installation, police surveillance, or false report to her landlord to her supervisors or employment situation. The Court finds that LaMont has not established that these actions even occurred much less that her employer caused any of these actions to occur or that they were adverse to her employment. Similarly, LaMont alleges that she was "threatened with her job," by which the Court presumes she means threatened with termination from her job. Neither LaMont's Complaint nor her Response to the Motion for Summary Judgment clarify exactly which City actions she is referring to in this allegation, and the Court cannot find in the record any statement by a City employee that could reasonably have been construed as a threat of termination. The Court therefore finds no such adverse action occurred.

In her Complaint, LaMont does not explicitly allege that the comments made by Lott relating to gender roles constituted an adverse employment action. (*See* Doc. 1 at 2-4.) Nevertheless, the Court finds that LaMont has not established that these isolated comments alone seriously altered the terms, conditions, or privileges of LaMont's employment. *See Dominguez v. Lake Como Club*, 520 Fed. App'x 937, 941 (11th Cir. 2013) (holding that the combination of an isolated discriminatory comment by the manager's wife and related and repeated offensive comments by a coworker did not constitute adverse employment actions).

The Court also finds that the removal of responsibilities and authority, specifically the removal of the EEO division from LaMont's supervision, was not an adverse employment action because it did not result in a decrease in pay, benefits, or opportunities for LaMont. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1243-44 (holding that a removal of responsibilities or authority that does not result in a decrease in pay, benefits, or opportunities for advancement is not an adverse employment action). Further, the Court finds that the publication of "false and malicious information regarding her to the press"

does not constitute an adverse employment action and that, regardless, LaMont has not alleged nor does the record clearly indicate what "false and malicious information" the City published about her. *Stewart v. Evans*, 275 f.3d 1126, 1136 (D.C. Cir. 2002) ("Public humiliation or loss of reputation does not constitute an adverse employment action under Title VII.").

LaMont alleges that the City's refusal to grant her request for a $10,000 raise constituted an adverse employment action. This request was filed only twenty-one days after LaMont received a $2,000 raise at the close of her six-month new employee probationary period. LaMont has made no showing that she was at all entitled to the significant pay increase she requested less than seven months after she began her employment with the City. The Court finds that the City's refusal to grant this request for a discretionary raise, therefore, was not an adverse employment action.

Finally, LaMont has also not established that the City's opposition to her application for unemployment compensation was an adverse employment action. LaMont's voluntary resignation was a legitimate reason for the City to oppose her application for unemployment benefits, and, in fact, the Georgia Department of Labor agreed. *See Moore v. Shands Jacksonville Med. Ctr., Inc.*, 2010 WL 5055838 at *3 (M.D. Fla. 2010) (holding that a legitimate challenge to an unemployment benefit claim is not an adverse employment action). Furthermore, LaMont does not state and the record does not indicate what, if any, "falsehoods" the City proffered in response to her unemployment application. The Court finds, therefore, that LaMont has not demonstrated that the City's opposition to her unemployment application was an adverse employment action.

## B. Leave Time Recalculation

As to the City's recalculation of LaMont's accumulated paid leave time, the Court finds that LaMont has alleged facts sufficient to support a finding that this was an adverse employment action. Specifically, LaMont alleges that the seven days of leave noted in her "new hire" letter were not credited to her in the City's recalculation and that, generally, the

recalculation was done incorrectly. The Court finds that the record does not clearly indicate whether the City's recalculation of LaMont's leave time was accurate or not. Such a reduction in paid leave time, if done inaccurately, could certainly affect the terms, conditions, and privileges of employment and would be an adverse employment action. The Court further finds that the record does not indicate that any other employee was subjected to a recalculation. The Court thus finds that LaMont has established a prima facie case for discrimination. However, the Court finds that the City has proffered a legitimate, non-discriminatory reason for recalculating LaMont's hours and LaMont has not established that the proffered reason is a pretext for discrimination but only that she disagreed with the result.

While LaMont was out on sick leave at the beginning of May 2010, Wes Smith discovered that she had only taken seven (7) hours of vacation leave since June 1, 2009 when she began her employment. The City determined that LaMont was taking paid leave when she performed work in excess of forty hours during a work week or in excess of eighty hours during a two week period even though as an exempt, salaried employee she was not entitled such "flex" or compensatory time. Upon further review of its records, the City deducted the total hours it determined LaMont had taken in paid leave.

The City argues that in recalculating LaMont's leave time, it was simply enforcing its leave time policy. LaMont argues that the City inconsistently applied its leave policy and applied it in such a way as to target LaMont. The Court notes that LaMont, as Director of Human Resources, was tasked with "maintain[ing] records adequate to reflect accumulation and/or utilization of the leave[s] of absence." Thus, the Court is left to wonder whether LaMont was in anyway responsible for an inconsistent application of the City's leave policy. Nevertheless, LaMont does not point to any particular individual(s) who *were* allowed to take leave in excess of their accumulated hours or who *were* allowed to utilize compensatory time, which would support a finding that the City's proffered reason is mere pretext for discrimination. *Cf. Ash v. Tyson Foods, Inc.*, 129 Fed. App'x 529, 533 (11th Cir. 2005), *rev'd on*

18

*other grounds*, 546 U.S. 454 (2006) ("[W]e have also observed that deviation from company policy can be circumstantial evidence of discrimination, especially where the rules were bent or broken to give a non-minority applicant an advantage." Rather, LaMont makes generalized assertions that department heads were given discretion regarding these policies. (Doc. 50 at 32.)

Even though LaMont contends that the City's recalculation of her leave time was inaccurate, this does not establish that the City's recalculation was a mere pretext for discrimination. LaMont has not produced any documentation or other evidence to support her allegations and statements in her sworn declaration (Doc. 48-1) regarding the leave time she earned and the leave time she took. LaMont insists that among the 192 hours deducted from her leave time were hours she took as unpaid leave or hours she took after she had already worked a full forty hours in a week or eighty hours in a pay period. (Doc. 48-1 at 10.) However, LaMont does not state that she was at any time paid less than her salary for pay periods in which she took this "unpaid leave." Therefore, such "unpaid leave" would have effectively been compensatory time or paid leave for an exempt, salaried employee such as LaMont. Based on LaMont's declaration, it appears as though she set her own schedule rather than following regular business hours. For example, she states, "December 24 & 25 were holidays. I made up the December 28-31 hours during the pay period. I worked from home during these days, but because I worked more than 90 hours in the pay period, I did not record the hours worked from home." While LaMont was clearly putting many hours into her job, her declaration does not rebut the City's determination that she did not follow City policy with regard to time off. Specifically, City policy was that salaried, exempt employees were not entitled to flextime, which the Court presumes to mean that salaried, exempt employees are expected to be at work during regular business hours unless taking paid or unpaid leave. LaMont appeared to be setting her own schedule. The Court finds that the City's decision to enforce its own policy regarding leave time and not allow LaMont to use leave hours the City determined that she had already taken was a legitimate, non-

discriminatory reason for recalculating LaMont's leave time, even if the City recalculated LaMont's hours incorrectly. Although LaMont disagrees with the City's recalculation of her total leave time, the Court finds that this is insufficient to establish that the City's enforcement of its leave policy was a pretext for discrimination.

### C. Alleged Constructive Discharge

LaMont argues that all of the adverse employment actions she alleges culminated in constructive discharge. (Doc. 1 at 3.) To claim constructive discharge as an adverse employment action, a plaintiff must establish that "the terms or conditions of employment under which she is asked to work are so intolerable that a reasonable person in her position would have been compelled to resign." *Morgan v. Ford*, 6 F.3d 750, 756 (11th Cir. 1993) (internal quotations omitted).

Here, the Court finds that the only adverse employment action LaMont suffered was the recalculation of her leave time; however, the other employment actions LaMont alleges to be adverse may be considered in the Court's determination of whether she was constructively discharged. *See Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1302 (11th Cir. 2005) ("[T]hese employment actions cannot be considered 'adverse' because they did not harm Plaintiffs. Nonetheless, we will consider these actions because they are relevant to Plaintiffs' constructive discharge claim . . . .").

The Court first notes the lack of temporal proximity between many of the alleged adverse actions and LaMont's resignation on July 12, 2010. In the days preceding her resignation, LaMont was not even in the office to experience the intolerable work environment she alleges; she was at a conference from June 25 to 30, 2010, out on paid leave on July 5, and out on unpaid leave on July 6 through 9. LaMont testified in her deposition that as early as April 2010 she had considered taking the leave time she believed she had accumulated and not working the entire month of June in order to be able to find other employment. (Doc. 38 at 305.) Finally, LaMont conditioned her resignation on the denial of her request for paid leave during the pendency of her EEOC charge.  LaMont's established

desire to take paid time off for a significant amount of time, which was frustrated by the City in multiple ways, and the lack of temporal proximity between the adverse actions alleged and her actual resignation support a finding that, though she may have been unhappy in her employment, the conditions of her employment were not so unbearable that a reasonable person in her position would have been compelled to resign. The Court finds, therefore, that LaMont has not established a prima facie case for discrimination by constructive discharge. The City of Albany is therefore entitled to summary judgment as to LaMont's Title VII race and sex-based discrimination claims, and the City's Motion for Summary Judgment is therefore **GRANTED** as to those claims.

### III.    LaMont's Equal Pay Act Claim

The Equal Pay Act, 29 U.S.C. § 206(d), makes it illegal for an employer to pay women lower wages than men for doing the same work unless the employer has a valid, gender-neutral reason for the pay discrepancy. To establish a prima facie case under the Equal Pay Act, a plaintiff must show that an employer "pays different wages to employees of opposite sexes 'for equal work on jobs . . . [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

Here, LaMont has alleged that she was paid less than her male counterpart, Thomas Shane Tucker, the Director of Safety, Human Resources, and Training at the City of Albany's Water, Gas, & Light Commission. (Doc. 1 at 3.) However, in her response to the City's Statement of Material Facts, LaMont agreed with the City that her starting salary when she was hired in 2009 was $80,000 and increased to $82,000 upon the successful completion of a six-month probationary period and that Tucker's 2009 salary was $71,299.22 and his 2010 salary was $78,037.21. (Doc. 49 at 6-7, 59-60.)  The Court finds, therefore, that it is undisputed that at no time during LaMont's employment did she earn a lower salary than Tucker, the male counterpart she has identified who performs equal work. The Court finds, therefore, that LaMont has not established a prima facie case for a claim under the Equal

Pay Act. The City's Motion for Summary Judgment as to LaMont's Equal Pay Act claim is therefore **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike is **DENIED**.   (Doc. 59.) Defendant's Motion for Summary Judgment is **GRANTED**.   (Doc. 30.)   It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by her Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this <u>7th</u> day of January, 2015.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**